NOTICE
Decision filed 07/28/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250727-U

NO. 5-25-0727

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| 111 SALVAGE, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 24-LA-1104 |
| | ) | |
| METRO EAST SANITARY DISTRICT and MIKE | ) | |
| NORDSTROM in his capacity as Executive | ) | |
| Director of METRO EAST SANITARY DISTRICT, | ) | Honorable |
| | ) | Sarah D. Smith, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Hackett and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*: The dismissal of plaintiff's action is affirmed where plaintiff failed to comply with the notice provisions of section 1-5 of the Metro East Sanitary District Act (70 ILCS 2905/1-5 (West 2024)).

¶ 2    Plaintiff, 111 Salvage, LLC (111 Salvage), appeals from the circuit court order granting the defendants' motion to dismiss, arguing that the circuit court erred in failing to apply the discovery rule to the notice provision in section 1-5 of the Metro-East Sanitary District Act of 1974 (Act) (70 ILCS 2905/1-5 (West 2022)). For the following reasons, we affirm.

¶ 3                                        I. BACKGROUND

¶ 4    On August 19, 2024, plaintiff, 111 Salvage, LLC, filed a two-count complaint against defendants, Metro East Sanitary District (MESD) and Mike Nordstrom in his capacity as Executive

1

Director of the MESD, for damages that resulted from a fire on plaintiff's property at 2188 State Route 111, Granite City, Illinois. The complaint provided the following allegations. MESD owned property at 1800 Edison Ave., Granite City, Illinois, which was adjacent to plaintiff's property. On or about August 20, 2023, the Madison Fire Department and other fire districts responded to a report of a fire at plaintiff's property. Upon arrival, first responders found multiple cars on fire and the fire. After two days of applying suppression techniques, the Madison Fire Department, and the other agencies, eventually controlled the fire. The Madison Fire Department was unable to determine the cause of the fire. On March 29, 2024, plaintiff received a letter from the Illinois Environmental Protection Agency, indicating an intent to pursue legal action for the environmental effects caused by the suppression techniques used to extinguish the fire at its property. The complaint stated, "As a result of this correspondence, and an attempt to determine the cause of the fire beyond the Madison Fire District's inability to determine the cause, [plaintiff] began its own investigation into the cause of the fire."

¶ 5    Plaintiff's complaint further alleged that on August 18, 2023, due to the abnormally dry conditions, Madison County issued a no burn order. As such, MESD owed a duty of care to plaintiff as an adjoining landowner who may have been impacted by a violation of the burn order. The complaint asserted that MESD violated such duty on August 18, 2024, when MESD, its agents, employees, and others at its direction, were engaged in the burning of driftwood, trash, debris, and other objects on its property immediately adjacent to plaintiff's property (burn site). The burn operation was part of a pattern and practice of burning unwanted items that continued for multiple administrations. The complaint contended further violation of the duty occurred when MESD, its agents, employees, and others at its direction, left the burn site unattended from and after August 18, 2023, without ensuring that the fire was completely extinguished. The fire, along

2

with parts and embers therefrom, spread from the burn site to the cars located on plaintiff's property, ignited the stack of vehicles at that location, and lead to a significant fire that required response and suppression. Plaintiff suffered economic loss from the property consumed in the fire and the remediation required after the fire suppression efforts. The first count was based on a theory of negligence, and plaintiff requested an amount in excess of $50,000, plus costs of suit and other such relief as the court deemed just and proper.

¶ 6    The second count of the complaint alleged intentional trespass. It incorporated the previous allegations and further alleged that MESD's agents, employees, and others at its direction intended to burn driftwood, trash, debris, and other objects at the burn site on August 18, 2023. The fire, parts and embers therefrom, at the burn site spread from the burn site to the cars located on plaintiff's property, despite the absence of plaintiff's permission to cause fire to spread to its property. Plaintiff requested an amount in excess of $50,000, plus costs of suit and for such further relief as the court deems just and proper.

¶ 7    On September 16, 2024, defendants filed a motion to dismiss plaintiff's complaint pursuant to sections 2-619(a)(5) and (9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(5), (9) (West 2024)). The motion stated that section 1-5 of the Act required plaintiff to notify MESD of its alleged damages "within 6 months after the occurrence of the damage or injury." It argued plaintiff failed to timely notify MESD of its damages and therefore plaintiff's suit for property damage against defendants must be dismissed with prejudice.

¶ 8    On December 13, 2024, plaintiff filed a response to defendants' motion to dismiss. The response argued, *inter alia*, that defendants' argument mistakenly assumed that plaintiff should have reasonably known its injury was caused by defendants on August 22, 2023. Citing the discovery rule—which tolls the start of a statute of limitations period until the injured party

reasonably should know that the injury was wrongfully caused (*Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981))—the response contended that section 1-5's notice provision began once plaintiff reasonably should have known its injury was wrongfully caused. It argued that this was not a situation like an auto accident where the injured party immediately knew—at the time of injury—the individual responsible for the wrongful conduct at issue. The response also contended that this case involved ongoing action by defendants to actively conceal the improper and negligent burning activities occurring on its property and a series of agency investigations into the cause and origin of the fire which occurred on plaintiff's property. Plaintiff contended it could not have reasonably known the injury was wrongfully caused by defendants until February 16, 2024. The response explained that the Madison Fire Department, the Office of the State Fire Marshal, and a variety of claims adjusters, conducted independent investigations into the cause of the fire, which took months. On February 16, 2024, the investigating entities provided plaintiff with their reports, which revealed the entities could not determine the cause of the fire. Thereafter, plaintiff received correspondence from the Illinois Environmental Protection Agency, indicating its intent to pursue a civil action against plaintiff as a result of the fire suppressant foam deployed by the fire departments.

¶ 9     The response further argued that because multiple governmental bodies—which possessed the relevant knowledge and skills—were already investigating the cause of the fire, plaintiff did not need to conduct its own investigation until well after August 22, 2023. After diligent investigation, plaintiff provided written notice to defendants on August 16, 2024, via an email from plaintiff's attorney to MESD's clerk, Stacey Partney. The response contended that because February 16, 2024, was the earliest possible date that plaintiff could have reasonably known that its injury was wrongfully caused by defendants' negligence, it complied with section 1-5's notice

4

provision by providing defendants with notice of damages by August 16, 2024. Alternatively, plaintiff argued that there was, at the least, a material issue of fact as to the date the claim accrued and was tied to defendants' wrongful conduct under the knew or should have known analysis implicated in section 1-5's notice provision.

¶ 10     On January 8, 2025, after a hearing on the motion to dismiss, the circuit court granted the motion to dismiss without prejudice. The circuit court's order stated "none of the allegations made during Plaintiff's argument were alleged in the complaint" as required by law and provided plaintiff 30 days to file an amended complaint "to add facts supporting its claim that its cause of action is not time barred (ie. [*sic*] continuous harm or equitable tolling/estoppel claims)."

¶ 11     On February 7, 2025, plaintiff filed an amended complaint. The amended complaint asserted the same counts and allegations as the first complaint. Additionally, it alleged, "On February 16, 2024, Plaintiff was made aware of facts leading it to believe that Defendant MESD could potentially be responsible for conduct that led to the fire and damage to" plaintiff's property. Thereafter, plaintiff investigated whether defendants were responsible, including Freedom of Information Act requests, hiring experts, and review of reports generated by the agencies that responded to the fire. It further contended that the cause of the fire was not readily apparent at the time of the occurrence and no clear cause was identified by the responding agencies. The amended complaint stated that plaintiff provided written notice to defendants on August 16, 2024. It further contended that the doctrine of equitable tolling and estoppel also applied where plaintiff demonstrated diligence through extensive investigation and resource expenditure and the extraordinary circumstance of defendants attempting to conceal its activities.

¶ 12     On September 16, 2025, defendants filed a motion to dismiss plaintiff's amended complaint, asserting the same arguments as its initial motion to dismiss. On December 13, 2024,

5

plaintiff filed a response to defendants' motion to dismiss, also asserting the same arguments as before.

¶ 13    On March 20, 2025, plaintiff file a motion for leave to file a second amended complaint, which was attached to the motion. The second amended complaint corrected which paragraphs should be incorporated into count II but was otherwise unchanged. On March 31, 2025, the circuit court ordered the second amended complaint filed *instanter* and struck defendants' motion to dismiss the amended complaint.

¶ 14    On April 3, 2025, defendants filed a motion to dismiss plaintiff's second amended complaint, arguing that based on the plain language of section 1-5 of the Act, the discovery rule did not apply to that statute's notice provision. They explained that section 1-5 does not state that notification is required within six months after *the cause accrued* or the party knew or should have known that its damage was wrongfully caused. Rather, section 1-5 states that MESD should be notified within six months of "the date the damage *occurred*." They contended that when plaintiff knew or should have known what caused the fire was irrelevant to whether plaintiff's claims were barred under the notice provision in section 1-5, as the only relevant date was the date the damages occurred. Defendants also argued that equitable tolling was not applicable and could arguably apply only if MESD somehow prevented plaintiff from discovering its injury.

¶ 15    On May 5, 2025, plaintiff filed a response to defendants' motion to dismiss the second amended complaint. The response argued that giving notice to MESD within six months of damages regardless of whether plaintiff knew the origin of the fire or who may have been responsible for its cause or not violated the discovery rule. Plaintiff reminded the court that the purpose of the discovery rule was to ameliorate the potentially harsh effect of a mechanical application of a statute of limitations that would result in it expiring before a plaintiff knew of his

6

cause of action. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 52. Plaintiff thus asserted the proper date to begin the notice provision was not August 22, 2023, as it could not have reasonably known its injury was wrongfully caused by defendant. Alternatively, plaintiff also argued that equitable tolling applied where defendants actively concealed the burning on its property.

¶ 16    On May 13, 2025, defendants filed a reply in support of their motion to dismiss the second amended complaint. Defendants noted, *inter alia*, that plaintiff did not support its position with the language of the statute or a statutory analysis. They further contended that equitable tolling was also inapplicable because the discovery rule was inapplicable to section 1-5 of the Act.

¶ 17    On June 12, 2025, the parties presented their arguments on the defendants' motion. The circuit court took the matter under advisement.

¶ 18    On August 25, 2025, the circuit court filed an order granting defendants' motion to dismiss the second amended complaint with prejudice. The circuit court acknowledged the force of plaintiff's arguments and that dismissal with prejudice was a drastic measure significantly impacting plaintiff's ability to seek redress. Nevertheless, the circuit court found the statutory language clear and did not incorporate the discovery rule. It felt compelled to grant dismissal absent express legislative language or controlling precedent extending the discovery rule to section 1-5. It also found "equitable tolling is not applicable as the Plaintiff was not prevented from discover[ing] the injury." The circuit court agreed with plaintiff that the outcome compelled by the strict notice requirement was unduly harsh under the facts alleged, and that such rigid application of the statute could extinguish claims before the discovery of their wrongful nature was reasonably possible but held that such fairness concerns should be left to the appellate court or the legislature. Defendants timely appealed.

7

¶ 19                                    II. ANALYSIS

¶ 20    Plaintiff argues that the circuit court erroneously believed the discovery rule was inapplicable to section 1-5's notice provision. Plaintiff contends this court should adopt the analysis in the Illinois Supreme Court's decision in *Rozny v. Marnul*, 43 Ill. 2d 54, 70 (1969), which in determining whether or not to apply the discovery rule, looked to the totality of the circumstances and whether problems of proof would result from applying discovery rules. Plaintiff states the circuit court did not even reach this question because it erroneously read section 1-5 to exclude the discovery rule. Plaintiff further argues that to adopt defendants' interpretation of section 1-5 would actively incentivize MESD to conceal its tortious conduct and allow the mere passage of time to absolve MESD's tort liability.

¶ 21    Neither party has cited a case that has explicitly found the discovery rule applicable to section 1-5. We need not address whether the discovery rule is applicable to section 1-5 because we find, assuming *arguendo* that the discovery rule applies, the rule would not toll the notification period here.

¶ 22    To alleviate the harsh consequences that flow from literal application of a statutory limitations period—which could bar plaintiffs from bringing suit before plaintiffs were even aware that they were injured—the Illinois Supreme Court adopted the discovery rule. *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 360 (1995). Under this rule, the commencement of the statute of limitations is delayed until "the injured plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Id.* at 361. The Illinois Supreme Court has repeatedly held that in cases involving sudden and traumatic events, a claim accrues and the statute of limitations begins when the damage or injury occurred. *Id.* at 361-63.

¶ 23    Plaintiff argues that the "sudden and traumatic event" is an exception to the discovery rule inapplicable here. It contends that there was no way of knowing of MESD's involvement until further information was unveiled as a result of various investigations completed by the local agencies and plaintiff. It further contends that it would be harsh and oppressive to require a party to give notice of an injury without first knowing that such wrongful actor existed at all. Alternatively, plaintiff argues that not all sudden and traumatic events are treated the same and such rule should not apply due to "the unknown factors which prevented 111 Salvage from appreciating and understanding the scope of the event, the damages arising therefrom, and the parties responsible thereto, to any requisite level for a cause of action to accrue instantaneously upon occurrence." It also contends that to require it to investigate adjoining neighbors without cause to suspect their wrongdoing "stretches credulity." We find plaintiff fundamentally misunderstands the principles of law regarding the discovery rule and sudden and traumatic events.

¶ 24    Plaintiff casting the sudden and traumatic event as an exception to the discovery rule does not sufficiently present the interplay of both legal principles. The discovery rule tolls the beginning of a statutory limitations period until a party knows he or she is injured and has reasonable cause to know the injury was *wrongfully caused*. (Emphasis added.) *Golla*, 167 Ill. 2d at 364. "The nature and circumstances surrounding the traumatic event are such that the injured party is thereby put on notice that actionable conduct might be involved." *Id.* at 363. So, claims based on sudden and traumatic events are not excused from the discovery rule, but due to the nature of a sudden and traumatic event, any cause of action based on such events necessarily meets the requirements of the discovery rule (*i.e.* the party had reason to believe his or her injury was wrongfully caused) at the time the sudden and traumatic event occurred.

¶ 25    With that said, plaintiff is correct that not all sudden and traumatic events put a plaintiff on notice that an injury was wrongfully caused. As explained in *Hochbaum v. Casiano*, 292 Ill. App. 3d 589, 595 (1997),

> "Where a traumatic injury is sustained in the absence of an apparent non-negligent cause, it is fair to place a burden on the injured party to inquire as to the actual cause. On the other hand, in the case of an injury that appears to have been caused by some non-negligent event, such as an illness, and the actual cause is unknown, the injured party has no reason to conduct such an inquiry and to require him or her to do so would be patently unfair."

The record here shows there was no apparent non-negligent reason for the fire.

¶ 26    *LePretre v. Petrie Brothers*, 113 Ill. App. 3d 484 (1983), is instructive. The plaintiff in *LePretre* was injured in an explosion at work. *Id.* at 486. The plaintiff was hospitalized from the date of the explosion on August 22, 1979, until the week before Thanksgiving in 1979. *Id.* In the spring of 1980, the plaintiff visited the site of the explosion and learned that an underground gas pipe had been dug up and removed as the result of an investigation into the explosion. *Id.* In November of 1981, plaintiff was advised by an attorney that his injuries may have been wrongfully caused and plaintiff subsequently filed suit on December 31, 1981. *Id.* The trial court dismissed the plaintiff's claims, ruling that his claims were barred by the two-year statute of limitations. *Id.* The appellate court affirmed the trial court's dismissal of the plaintiff's claims, finding "the Statute of Limitations began to run on August 22, 1979, the date of the explosion." *Id.*

¶ 27    While the plaintiff in *LePretre* was not injured at his own property, he—like plaintiff here—was unaware of who was responsible for his injuries at the time the event occurred. If an explosion is of such nature that the event itself puts a reasonable person on notice, we find an

unknown, unexpected fire also constitutes a sudden and traumatic event. See, *e.g. Pratt v. Sears Roebuck & Co.*, 71 Ill. App. 3d 825, 829 (1979) (stating that a claim for damages caused by a fire accrued when the fire occurred).

¶ 28    Despite plaintiff's argument that it did not know it should notify MESD until it was aware that MESD was potentially liable, the discovery rule does not concern plaintiff's knowledge of who was responsible for the injury. See *Nolan v. Johns-Manville Asbestos, et al.*, 85 Ill. 2d 161, 169-70 (1981) (explaining that knowledge of a parties' negligent conduct is not required under the discovery rule, and to require otherwise would impose a standard "beyond the comprehension of the ordinary lay person to recognize" and "assumes a conclusion which must properly await legal determination."); *Knox College*, 88 Ill. 2d at 416 ("Wrongfully caused *** does not connote knowledge of negligent conduct or knowledge of the existence of a cause of action."). For example, in *Berry v. G.D. Searle & Co.*, 56 Ill. 2d 548, 550-51 (1974), the plaintiff filed breach of warranty of fitness and strict liability claims against the manufacturer and seller of birth control pills, alleging that she had suffered a stroke as a result of the unreasonably dangerous nature of the pills. *Id.* The Illinois Supreme Court rejected the plaintiff's claim that her cause of action did not accrue until she discovered that the pills may have caused the stroke. *Id.* at 559. The *Berry* court found the plaintiff's stroke was a traumatic event, and her complaint showed that she knew of the stroke, that she was ill, and that the stroke caused damage. *Id.* at 558-59. As such, it held the statutory limitation began at the time of her stroke. *Id.* Accordingly, plaintiff's knowledge of MESD's, or any other parties', specific involvement in the fire on its property is not determinative or relevant for the purposes of the discovery rule. Plaintiff's arguments that the discovery rule tolled the notice provision based on its unawareness of the party responsible must therefore fail.

11

¶ 29 The relevant inquiry is when the injured person possessed sufficient information concerning the injury and its cause to put a reasonable person on notice "to determine whether actionable conduct is involved." *Knox College*, 88 Ill. 2d at 416; *Golla*, 167 Ill. 2d at 363-64. Because plaintiff's claims stem from the sudden and traumatic event of an unknown fire, it was reasonably put on notice to determine whether actionable conduct was involved. Thus, even assuming the discovery rule applied, the rule did not toll the notice provision under section 1-5.

¶ 30 Regarding plaintiff's contentions that such outcome is harsh, the Illinois Supreme Court has disagreed with similar policy and fairness-based arguments. *Golla*, 167 Ill. 2d at 371. It explained that statutes of limitation rest on the premise that after some time, the right to be free of stale claims should prevail over the right to prosecute the wrongdoing. *Id.* at 369. Statutes of limitation encourage claimants to investigate and pursue causes of action. *Id.* at 370. In analyzing the *Rozny* balancing test of a claimant's and defendant's interests, the court stated, "the interests of the plaintiff would prevail over those of the defendant, and the discovery rule would apply, *only* in circumstances where a plaintiff neither knew nor should have known of the existence of her right to sue within the applicable limitations period." (Emphasis in original.) *Golla*, 167 Ill. 2d at 364-65. The sudden and traumatic event rule is aligned with that balance, and "[a]lthough any bright line rule has the potential for creating hardship in an individual case, the plaintiff cannot persuasively argue that the 'sudden, traumatic event' rule is burdensome and unjust to plaintiffs in general." *Id.* at 371.

¶ 31 Moreover, we do not find hardship under the circumstances here. While plaintiff admittedly delayed its own investigations, governmental agencies promptly investigated the fire. Plaintiff further admits that once these agencies provided their reports to plaintiffs on February 16, 2024—six days before the section 1-5 notice provision expired—plaintiff was aware of MESD's

12

possible involvement in the fire. Such facts show that prompt investigation was possible and plaintiff was aware of MESD's possible involvement prior to the notice period expiring. Accordingly, we do not find the application of the sudden and traumatic event rule harsh as applied here.

¶ 32    For the same reasons, we moreover reject any notion that the application of the sudden and traumatic event rule under the facts of this case necessarily required plaintiff to send notice to any conceivable responsible party without reason or cause. Our holding simply abides by the long-standing legal principles that "once it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights." *Nolan*, 85 Ill. 2d at 171. Therefore, even if the discovery rule applied to the notice provision in section 1-5 of the Act, the rule did not toll the notice provision under the circumstances of this case.

¶ 33    Alternatively, plaintiff contends that it provided "alternative backing for its claims of negligence and intentional trespass through the theory of equitable tolling." The conclusion section of plaintiff's appellate brief further states that plaintiff "alternatively relies on the principles of equitable tolling to allow Plaintiff's Complaint to be heard, especially given the standard that a court should dismiss only if the plaintiff can prove no set of facts that would support its cause of action."

¶ 34    Plaintiff overlooks that the circuit court below considered its equitable tolling argument and rejected it on the merits. Plaintiff provides no argument as to how the circuit court's ruling was erroneous or any authority to support that equitable tolling is applicable to this case. Accordingly, it has forfeited these arguments. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 35    While we do not address the circuit court's reasoning for granting the motion to dismiss, we may affirm for any reason supported by the record. *Zibrat v. City of Chicago*, 2025 IL App

13

(1st) 241273, ¶ 34. Here, assuming the discovery rule applies to section 1-5 of the Act, plaintiff still did not comply with section 1-5's notice provision. As such, the grant of the motion to dismiss was not error, and we affirm the circuit court's dismissal.

¶ 36                                    III. CONCLUSION

¶ 37    The circuit court did not err in granting defendants' motion to dismiss where plaintiff failed to notify defendants of its damages within the notice period pursuant to section 1-5 of the Act, and plaintiff's arguments of equitable tolling are forfeited. Accordingly, we affirm the circuit court's order.


¶ 38    Affirmed.